The next case scheduled for argument this morning is Hansen v. Miller, number 20-3591. Yes, good morning. I'm not sure that my camera is working. This is Paula Miller. I'm sorry, I don't see you. I do not see you. Okay, I don't know why. Let me just see if that works. Did you interact with the clerk of court earlier? Yes, we did. I don't know, and they saw me. Ms. Rodriguez, can you help on this? I'm sure, Judge. Ms. Miller, if you could deselect your camera and try to select it again and see if that works. Okay. I'm sorry, I'm not able, does not seem to be allowing me to do this. Is there a refresh button that you could press? Right-click, if you could do right-click refresh. Dear, I'm so sorry. Okay, maybe we should just proceed without the camera. Okay, we can hear you very well, Ms. Miller. All right, thank you very much. I'm sorry, one last thing. Ms. Miller, if you could please click on star video. Yes, I'm there. And click on it and see if that works. It's just saying failed to start video camera. Please select another video camera setting. I'm just not sure why this is happening. Folks, I think we should just get going here. Okay, I do apologize. Let me just ask you a question before you begin. Can you see a clock or do you have a way of keeping time? Yes, I do see the clock. Okay, very good. Yes. All right, then why don't you go ahead, please? So may it please the court. My name is Paula Miller. I am the attorney for the appellant, Joan Hanson. The lower court erred when it dismissed the complaint against the attorney defendants under Rupert Feldman, Race Judicata and Collateral Estoppel. Initially, the court exercised a very shallow application of the Rupert Feldman doctrine in that it did not apply the refined formula of the Hoblock case and Exxon Mobil. The court seemed to categorize this foreclosure case similar to many other foreclosure cases where the owner of the property loses their house in the state court foreclosure action and then runs to the district court for a de facto appeal. That is not what occurred here. In this case, neither of the two substantive requirements of Rupert Feldman were met. Initially, the injury complained of by the plaintiffs in this court is not the state court judgment. The injury already existed prior to the state court judgment. And what the injuries were... I just ask you a factual question, which is, according to the district court's opinion, Ms. Hanson still had an appeal ongoing at the time she filed the complaint. Is that right? Yes, she did. So has that terminated or is it still ongoing? It's still ongoing. We just had oral argument in the second department on December 9th. So the state proceedings haven't even ended. I mean, does Rupert Feldman apply when state court proceedings are still ongoing? Well, that's an interesting question. We would argue that there has been no final adjudication in the state court proceeding. And so it would not apply to that. So that seems like that's a question. I mean, I understand the district court didn't address it, but this is a jurisdictional question. So maybe that matters. But then I guess on your other argument about whether the injury is the same, I understand that the injury is the enforcement of the Miller mortgage, but didn't the state court decide that? I mean, aren't you seeking damages for harms that result from the state court's enforcement of the mortgage? No, the case, the complaint and the causes of action against the attorney defendants are for their deception in the procurement of the judgment. And so although Ms. Hanson was in fact injured by that judgment, she was injured prior to that judgment in the fact that the Millers were not paying her, that the Millers had placed this mortgage in Rachel Miller's name. But what damages actually do you allege? I was unable to make out in the complaint what damages there are apart from the injuries suffered from the foreclosure. I mean, if you win in the state court, ultimately on appeal, what damages are going to be left for you to pursue against these lawyers? So Ms. Hanson had to endure a five-year foreclosure action where she was fighting to enforce her lien. The attorney's legal fees, by the way, in and of themselves, if there is a deception on the court, the incurring of legal fees is its own source of damages. And that's the Court of Appeals' alpha... Yeah, that's right. You're trying to seek legal fees from having to defend the judgment at all. Is that right? Yes, because the purpose of the foreclosure was not really to foreclose and realize on a lien, but it was purely for purposes of... I guess the thing that I'm having trouble with a little bit is I could understand a case where lawyers commit fraud, say they create a fraudulent document that extends the proceedings by an extra six months or something, and you seek damages in terms of an extra six months. But here, it's not exactly like the alleged fraud on the part of the attorneys is totally separate from what the court ultimately decided, right? Because you're saying that the fraudulent activity is the arguments they made in favor of the enforcement of the Miller mortgage, isn't it? And so then it's tied up with the decision as to whether the Miller mortgage was valid. Well, yes, but Hoblock does warn against this concept of the inextricably intertwined, and this was, in fact, separate conduct. Actually, I'm sort of thinking separately about whether you're challenging the judgment, which we can think about in terms of the preclusion doctrines or just as a collateral attack. But I guess my question is, is it possible to award you damages for the arguments that lawyers made without calling into question the legitimacy of the state court judgment? Can the order of foreclosure be valid and you still be entitled to damages for the conduct of the attorneys? Yes, it can, because Amalfitano says that the success of the deceit has no bearing on whether or not there's a separate claim for attorney misconduct and deception. So how would you measure? How would you measure? How do you propose to measure the damages that you suffered? So the damages are the over $200,000 in legal fees that Ms. Hansen was required to spend to defend the foreclosure. The damages were the fact that she did not ever was never to this day repaid her $300,000 investment and her lost time and value. But if the mortgage was valid and the Court of Appeals, the Second Department upholds that, those aren't damages that can be recognized here. Well, they can. There's no separate wrong. They can, because the sole determination that was made by the state court was that the mortgage was valid and it had priority over Joan Hansen. So there could, in theory, be a valid mortgage. Mr. Miller and Mrs. Miller may have had a mortgage to preserve Mr. Miller's investment in the property. So the validity of the mortgage and the priority is one thing. But enforcing that mortgage and using the judicial platform as a way of extinguishing Ms. Hansen's interests and requiring her to litigate for many, many years and spend hundreds of thousands of dollars, that's different conduct and it's different wrong. Don't forget, Ms. Hansen had the right to consent to a sale. So when they did this foreclosure action, they stripped her of that right. And that really is what the foreclosure was about. The foreclosure was not about a default and that Mr. Miller defaulted in his wife's mortgage. It had a sinister purpose. But the state court said that they were within their rights to do that, didn't it? The state court, well, let's focus on the attorneys. Let's not forget that we are appealing on the dismissal of the case against the attorneys. That's a useful argument, right? So you are actually just pursuing these claims against the attorneys. And maybe there are other, I guess you would say, maybe there are other reasons why you might not be able to prevail against the attorneys. But it's not because the claims against the attorneys have already been litigated. That is correct. And in fact, Ricker-Feldman is not applicable to non-parties. And that's the Lance v. Dennis case. And we also cited Roundtree. Can I ask, what claim would you have against the attorneys that you can succeed in if we are bound to hold that the mortgage is valid? So if we're bound to hold that the mortgage is valid, all that does is mean that there is an obligation and an instrument that Rachel Miller had against the property. The foreclosure of that mortgage, however, and the attorney's conduct in making false representations to the court about there being a default, in colluding together as to who would oppose a motion, who wouldn't oppose a motion, various statements that were made to the court, that conduct has never been analyzed. It was never looked at. I guess I have a question about that. So that conduct was analyzed in the sense that those are the arguments that the attorneys made before the state court. And the state court decided whether to accept or reject those arguments, right? So why isn't that analysis by the state court? Or is that just a separate issue from res judicata and collateral estoppel? Maybe that's still a reason to reject it, but it's not one the district court reached. Is that your position? That's something that the district court, that the state court never considered. It's something that the state court never considered. And if we're focusing just on the Rupper-Feldman doctrine. I'm not focusing just on that, by the way. I mean, you should address all the issues. But one thing that you say that the lawyers did that was fraudulent was say that Rachel Miller paid down the BVM mortgage with her own personal funds, right? That was an argument they made to the state court. But the state court didn't buy that, right? The state court said, no, this was marital property. And I just don't see like, so the state court did not adopt that argument, right? So the state court did seem to determine that actually they were making a non-meritorious argument about personal funds. Maybe that's a misrepresentation. Maybe it's a misunderstanding. But isn't that something that the state court considered? The state court did consider that. But again, the Court of Appeals in the Amalfitano case clearly said that a deceptive- I see. OK, so then maybe your argument is consistent with that. So you would say, well, OK, it's true that they didn't prevail on that argument. But I should be able to sue the lawyer for making that representation fraudulently and get separate damages that are attributable to that misrepresentation, whether it's extending the legal proceedings by a certain amount. Or getting legal fees for having to write a brief opposing it. Is that your argument? That's exactly right. That's exactly right. I think I have that argument. Could I ask you just one thing before we turn to the other side, which is this argument about CPLR 5015, that you need to seek relief from the judgment in the first case before you could turn around and pursue an action in a separate case to get damages against the lawyers. You know, some state courts have said that- I'm sorry, some New York courts have said that it's not totally obvious you have to do that. I didn't really see an answer from you to that argument. What's your position on that? Yeah, so my position on that was, first of all, Urias, the case that the court cited, which I believe the Lieberman defendants brought up in their brief, was that that involved a determination that in fact had already- the attorney in that case, his legal fees was already part of the underlying state case because there had been a hearing on the extent of his legal fees. So it made sense. The state court already had jurisdiction in that particular case to decide the legal fees. And so the court held that a separate action was not appropriate. But if you really look at 5015, and you look at the language of 5015, it says that the party can vacate a judgment that is procured through the misrepresentation or fraud of an adverse party. The language adverse party is specifically stated in the statute itself. It doesn't say of the adverse party's attorneys. And so- Everything an adverse party is going to do in court is going to be through the attorneys, isn't it? Well, yes, but there's- look at the case of the First Department case- It seems like you're making an argument. I mean, do you deny that you could seek relief from the judgment, or you're just saying you don't have to? I don't think that we can, because I think if you start to bring the attorneys under 487 claim into the very case that they're litigating, they would be disqualified as a witness. They suddenly are a party to the action simultaneously with being an advocate for their client. It seems to really upend that proceeding. And we cited a case in our papers, it's 360 versus something, I don't know the full quote or the full citation, but where it clearly expresses the concern that the 487 claim that is brought within the same case that the attorney is acting in a representative capacity creates a whole other host of problems. Namely, the fact that the attorney is- his own conduct is now subject to review, and how can he possibly be representing his client at the same time? So if you had to do that, then- well, I mean, that's if you had to add a claim, right? But you could seek relief from the judgment because it was obtained by fraud. And then I guess you'd say, well, we'd still have to institute a new action to seek damages from the attorney. Yes, yes. And so why should- Could I ask, are these claims part of the appeal? No, and so that's- They're not raised before the second department in challenging the validity of the mortgage. None of these claims about false witness or ulterior motives or those kinds of things that you're saying against the attorneys. Is that right? No, absolutely no claims are made against the attorneys in the state court case, in the lower court, or in the appeal. It was never raised. No, I don't mean causes of action brought for damages against them. I mean allegations of wrongdoing in enforcing the mortgage. In our closing argument, and the Balanoffs raised this in their brief, in our closing argument, we do point out to the suspect nature of Gilbert Balanoff, who represented SRI, why he was advocating for a foreclosure. That's highly unusual that the owner would be advocating. So yes, I suppose to a limited degree in a closing argument, that was made. But there was no evidence to that effect. All right. Thank you. Thank you very much. We'll hear from your opponents. Thank you. We have Mr. Isaac representing the Millers in SRI first. Is that right? Yes, it is. Good afternoon, Your Honors. Brian Isaac. I represent the Millers in SRI. My arguments are going to be noticeably brief. I believe I heard my adversary concede that she does not have an appeal against me, and that even though she filed a notice of appeal, dealing with all of it. That was my understanding, is that on appeal, we only have the claims against the attorneys, right? That's correct. That's also your understanding. You don't think that there are any claims against your clients? Not only do I think it, if I can point you to the reply brief, page one, this is what appellant did not appeal that part of the district court September 29, 2020 memorandum in order, which dismissed the complaint as to defendants Matthew Miller, Rachel Miller, and Stilwell wrote in collectively, the Miller defendants. And consequently, the Miller defendants have no standing to submit a brief on this appeal. Thus, the brief submitted by the Miller defendants must be disregarded in its entirety. I think it's absolutely clear that they have abandoned any appeal that they might have against my clients. And therefore, based on that admission, and based on course chart. So, your position is you don't really have an interest in the rest of the claims against the attorneys? That's true. I mean, as a party, we do not certainly res judicata and collateral estoppel apply. I argued the appeal on December 9 with Ms. Miller. But do they? I mean, for res judicata and collateral estoppel, it has to be that, like, essentially the issue. Not for collateral estoppel, it has to be the issue was decided. For res judicata, it has to be that, essentially, the lawyers were represented the prior proceeding. But I mean, you're saying that you don't really have the same interests as the lawyers. These are different claims. Isn't that probative of that, the analysis, the preclusion analysis? Yes, it is. But my clients were the actual litigants. So res judicata and collateral estoppel. As against them, you're saying. Yes, just as against my clients. I'm not representing anyone else. And there are two other very good lawyers who can make the arguments for the lawyer plan. So all I'm saying is that with respect to my clients, I don't see any pending appeal. And we would ask for an affirmance on that basis. The notice of the appeal did reference your clients, but it's been abandoned insofar as it refers to them. Is that right? Okay. That is correct, Your Honor. All right. Very good. Then we'll turn if you're done. I'm done, Your Honor. Thank you. All right. Very good. We'll turn to Ms. Fetter for Mr. Balanoff. Good morning, judges. May it please the court. Nicole Fetter for Gil Balanoff and Balanoff, D.C. As Your Honor's correctly noted, the trial court, Judge Hurley, properly applied the Rooker-Seldman doctrine. He properly relied on Fiorella. And in fact, the district court, it should be noted that the district. Can I ask you just the question that I asked to opposing counsel? So there is still a state court proceeding ongoing. We don't actually know who is going to win in the state court proceedings because there's an appeal, right? So Rooker-Seldman is about state court losers who come to federal courts and seek review of state court judgments after the state proceedings have ended. But the state proceedings are ongoing. So why would Rooker-Seldman apply? Well, we believe that Rooker-Seldman applied because there had been case law with regard to that once the underlying judgment has been issued. And I think actually Ms. Miller cited to this in her papers is that once the judgment has been issued, it is primed for Rooker-Seldman determination. However, the origin of Rooker-Seldman is that only the Supreme Court has certiorari authority from the state courts, right? So if the state proceedings are ongoing, even the Supreme Court is not going to be able to take that case. Like we're not stepping on the Supreme Court's toes by hearing a claim that implicates a judgment that's not final in the state courts, right? That's correct, Your Honor. And even Your Honor mentioned earlier before about the determinations of what was on appeal. The issues with regard to the pay down of the mortgage, whether the racial mortgage was valid and enforceable, whether the Hansen loan had priority or didn't. Those are the exact issues that are actually... But are they the exact issues, right? So she's saying, look, you misrepresented something to the state court. Perhaps the statement about whether Rachel Miller used her personal funds and other misrepresentations and so on. The state court doesn't necessarily buy them or not, but she's saying, I have a remedy under New York state law against the attorneys to get damages for that misrepresentation irrespective of the state court judgment. She doesn't want to... She's not asking the federal court to overturn the state court judgment, right? So why isn't that just a separate claim? Well, I think actually she is in effect trying to backdoor that the underlying foreclosure decision and the judgment that was issued. We do believe... So what about this scenario? What if it's just, we say, okay, the lawyers lied about whether Rachel was using her personal funds. And because of that misrepresentation, the proceedings were stretched out for an extra six months. And I want to get six months of legal fees that I needed that resulted from that misrepresentation. I'm not challenging the ultimate decision of the state court or calling it into question, right? I just want the recovery against the attorneys for their misrepresentation irrespective of how the state courts came out in the final judgment. Why isn't that a separate claim? That doesn't seem to call into question the state court judgment. I see my time has finished. May I answer your question? Please take your time and answer. Yes. I don't think it should be a separate claim because as Your Honor aptly pointed out, the attorneys are advocating the testimony of Rachel Miller and Matthew Miller, which was determined by Judge Peck to be more persuasive than the testimony of Ms. Hanson. I don't believe that that should be... Isn't that just the argument that she can't make out a claim, right? So if really all she's doing is saying that the fraud is you made these arguments that weren't good, like it seems like under New York state law, deceit on a court is a pretty high standard. So maybe she wouldn't prevail on the merits. But isn't it very weird to say that that claim has already been litigated? I mean, the lawyers were not parties in the prior case. There was not litigation over whether the lawyers had committed a misrepresentation, right? Isn't that a different argument from saying it's issue or claim preclusion? No, I don't think it is, Your Honor. I think it's exactly the same issue because it relies on the findings that were made by the Supreme Court in the foreclosure action. The findings that were very specific as to whether the racial mortgage was valid and enforceable and whether John Hanson had priority or she didn't. Well, can I just ask you about, just imagine this scenario. Like let's say lawyers in a state court proceeding created a fraudulent document, right? I know that that's not what happened here. I'm just saying, let's imagine that that happened. And because they introduced a fraudulent document, it led to an extra six months of litigation over the implications of that document and what it means and where it came from and so on until it was discovered that it wasn't authentic. And then the proceedings went back on the original track. If she brings a claim that says, look, I'm going to sue the lawyers for creating a fraudulent document and my recovery is six months of legal fees that I had to spend getting to the bottom of the origin of that document. I want that recovery against the lawyers for their fraudulent conduct. That's a totally separate thing from the actual merits of the state court litigation, isn't it? And doesn't New York give you a right to recover for that? And so why should we say that that's precluded? So in that kind of scenario where you could divide them up pretty neatly, wouldn't you say that the claim against lawyers would not be precluded? Well, I think in that case, which is very different from the factual scenario we have here, it could be argued perhaps that there is a distinction where the lawyer is actually presenting something here. However, the lawyers were presenting the exact testimony that was elicited by Rachel Miller and by Matthew Miller. This is a completely different scenario. You would say there's no extrinsic activity that's alleged or wrongdoing that's alleged. And to the extent that there is misbehavior by the lawyers alleged in connection with their pursuit of the foreclosure action, that is all wound up in the determination of validity of the mortgage, which the Supreme Court spoke to and the Court of Appeals will speak to. I mean, is that right? And do you agree that those kinds of allegations about misconduct or misrepresentation by the lawyers on behalf of their clients are some of the grounds alleged for invalidating the mortgage on appeal? I believe so. And although, while it's not specifically stated, Ms. Miller did mention just before in her argument about the fact that even in her closing argument for the underlying foreclosure action, she did raise Mr. Balinoff's alleged fraudulent misstatements with regard to, as Judge noted, the paydown of the mortgage and the funds that were utilized by- Yeah, but in that proceeding, she wasn't seeking recovery against the lawyers, was she? That was an argument for not enforcing the Miller mortgage, right, or for enforcing the Hansen loan. Correct, but it's the same argument that she's making in this instance and in the- Sometimes different claims overlap, right? I can have a claim against a different party, and it can rely on similar facts, right? The fact that there's overlapping of the factual matter doesn't mean I don't have the claim, right? Well, then that brings up the issue of the claim preclusion, which unfortunately we didn't get an opportunity to discuss here today. Can I jump in? Can I jump in? Because I know we're over time. Did you- Please go ahead, Judge Perez. Thank you. Can you elaborate for the court, like what you think is your strongest argument for why your clients are in privity? I think that the- Judge Hurley did find that the attorney-client relationship was supportive of a finding of privity for the application of the preclusion doctrines, but I think also the fact that Ms. Hansen has alleged that the party's interests were fully aligned, they cluded together, they were part and parcel of this allegedly orchestrated scheme, which are her own allegations. Those are the allegations of Ms. Hansen, which she's alleged, and I think the combination of all of that demonstrates that there is privity. Does that work in the fraud context and a misrepresentation context? How would a client interest in prevailing extend to a attorney committing fraud or misrepresentation upon the court? Aren't they two separate interests involved? Even if they are both motivated in a desire for winning, you certainly couldn't argue that the client is compelled to have their attorney engage in improper behavior that way. Sure, but I think in this instance, the information that was presented by Mr. Balanoff was the testimony of his clients, of SRI and Mr. Miller, who was president of SRI. So I think that's a distinction. Can I get at it a different way? So this judiciary law 487 that deals with misconduct by attorneys, the claim that's in this new suit, so that kind of claim couldn't possibly have been brought against the Millers, right? Correct. So we're saying that a claim that couldn't possibly have been brought in the first proceeding, nevertheless, was effectively litigated or could have been litigated in the first proceeding because the interests with the Millers were so aligned? Well, I think the argument with regard to the 487 application is twofold. One is that the underlying statements that are the fraud were effectively litigated in the underlying action. They were raised. They were addressed. Because I understand you discussed the statements, but when we apply res judicata, we look at the individual claim, right? So there was no claim against the attorneys for fraud or for violation of 487 in that first proceeding, right? Correct. Suggest that we— On the collateral estoppel argument, the privity issue wouldn't have even been— We've kept you well past your time, and I think we have some of the same questions for Mr. Flanagan. Mr. Flanagan, why don't you go ahead, please? Thank you so much, Judge. Thank you, Judge. May it please the court, Matthew Flanagan for the defendants, Douglas Lieberman and Mark Kotsis and Lieberman. To respond to the questions regarding the allegations and whether they were litigated in the prior action, the basis of all of plaintiff's claims is that this mortgage was not valid and enforceable. The court, the state court, found that it was, and so that issue has been litigated, and it was decided against plaintiff. Sorry, but the New York Court of Appeals has told us that a claim under the New York judiciary law under 487 doesn't depend on whether the state court was persuaded by a misrepresentation or even whether the complainant prevailed or lost the original litigation, right? So you can have a claim against an attorney under 487 even if the state court rejected all of the alleged deceptions, right? Isn't it just a different sort of claim? Well, whether the attorney who is alleged to have committed the deceit succeeded with it or not, it's true. It does not. You can still have a judicial 47 claim even if the attempt was not successful. But here there are issues that have been fully litigated, and there are some collateral issues which are sort of intertwined with the final judgment, with the final trial court findings that this was a valid and enforceable mortgage. And one of those issues was whether who the money came from, whether it came from Mrs. Miller or Mr. Miller. So all of these issues are intertwined and wrapped up in the judgment, which has been decided against. I guess on that issue, right, Ms. Hansen prevailed on the narrow question of whether the money came from Ms. Miller's personal funds or not, right? The state court said, no, these are marital funds, right? So the decision was based on other grounds. So if she could show that the lawyers knowingly misrepresented, you know, the origin of the funds, why wouldn't she be able to get damages for that? You know, these claims also have to be pleaded with particularity. I don't know how she would be able to remove certain- Well, okay, that's fine. But the district court didn't reach failure, say, like 12B6, right, or the pleading rule. So that would be a reason to send it back. I'm saying it just hasn't been litigated yet, and maybe it will fail, right? Maybe it won't prevail either for specificity of pleading or for failure state of claim, but the district court didn't even reach that question. Correct. Now, and also, if I may say, with regard to the Arias claim, which your honor mentioned earlier, the Arias case, which we cited, the courts indicate in New York that the plaintiff has to go back and reopen that, that underlying case. And I think the point of that is to avoid excessive litigation, to have a situation like we have here. So they have to go back and reopen it if what they're doing is getting relief from the judgment, right? But here she wants damages against the attorneys for their own fraudulent conduct. It's the same thing that happened in Arias. The same thing that happened in Arias. They tried to get damages from the attorney. And I handled the Arias case, so I'm familiar with it. And that's exactly what they did there. They were trying to sue the attorney for damages. So can I ask, is this issue, so I'm interested in this issue, but it's not, it's not a Rooker-Feldman issue, right? It's a state law question. It's not exactly res judicata, right? It's a matter of New York state procedures. And it's not, it's not collateral estoppel, right? So it's a separate thing. So did the district court really, so wouldn't, if that were the reason why she can't pursue this claim separately, wouldn't we ask the district court to consider that directly? I mean, how does it fit in any of the headings the district court actually decided? Over my time, if I may continue. Please take your time to respond. The judge, actually the district court did address it in the course of addressing Rooker-Feldman. Yeah, no, I know. It's very weird. In the section on Rooker-Feldman, there's this one paragraph where it comes up, but obviously it's not a Rooker-Feldman issue, right? I would agree with that. Right, so what is it? It's a separate issue, an alternative grounds for dismissal, which maybe it wasn't clear. Maybe the district court did not make it entirely clear, but it is an alternative grounds for dismissal, which the court relied on. Can I jump in to the entanglement that is being alleged here? Is it possible for a second court to evaluate whether or not there was a misrepresentation and whether or not it was material without actually looking at whether or not a deciding court was persuaded by it or deceived by it or incorporated at all? Because it seems to me if they can, then we have a separation that doesn't have the kind of entanglement that folks are concerned about. I believe that there could be. And then you'd have to show the damages stemming from a particular misrepresentation. And if you go through an entire file and a transcript of a trial and look at everything and find maybe something that wasn't true or something that was true, and you'd have to, I guess, divvy up and try to figure out what damages are attributable to that. And that would have to be pleaded in the complaint because these do have to be pleaded with particularity. So it is possible to do that. Yes, it would be very difficult, I think, to quantify any damage. It is difficult to disentangle still the kind of activities that are alleged here from the state court's ultimate finding that the mortgage was valid, even if it came from if Rachel's mortgage was purchased with marital property and her credibility was impugned. I'm having a little difficulty separating them two other than hypothetically based on allegations here. I agree 100%, Judge. And am I right in understanding that these kind of allegations about the what lays behind the arguments about the validity of the mortgage were made below and continue to be made now on appeal, including that the lawyers were making frivolous or incorrect arguments for one reason or another? Is that right? Correct. And I think Ms. Fader had cited to the trial transcript where a lot of these claims were made before the trial judge who decided against the plaintiff based on all the evidence that he had seen, all the testimony he heard. And Ms. Miller, who represents the plaintiff here, was the attorney for the plaintiff in the underlying case as well. And so this was an entire trial. And I think collateral estoppel may be the better argument for the defendants, even aside from Rooker Feldman, which is far more complicated. But I just don't see how they get around. But is collateral estoppel necessary? So the issue has to actually have been decided in the prior proceeding, right? The issue about whether the attorneys committed a fraud or a deceit on the court was not decided in the first proceeding, was it? No. The issue that was decided was that there was a valid and enforceable mortgage. And that issue, given that issue... So that's fair. So that isn't the right way to proceed to say, well, the issue that the mortgage is valid and enforceable, that is decided and Hansen is not allowed to question it. But to the extent that the claim against the attorneys can be disentangled from that issue, like she's trying to seek damages just for a specific fraud that doesn't go to the validity of the mortgage, that would be allowed to proceed, right? That wouldn't conflict with the question that was decided. Well, and that kind of goes to Judge Perez's question. If you can disentangle, perhaps. It's our position you cannot disentangle. And there was a whole trial. There's multiple questions asked. Just to go back to the hypothetical that I had asked before, if you have a case where an attorney makes one specific misrepresentation and it just leads to an extra six months of proceedings and the opposing party wants damages just for the legal fees that had to be expended in those six months, but doesn't call into question the ultimate decision and doesn't want relief from the judgment, why isn't that a separate claim? Well, the Urias case would stand in the way of that. And in the Urias case, you have to go back. And I think it's just as much a policy decision as anything else. Would one be able to seek sanctions and an award of attorney's fees from the court that made the adjudication regarding the mortgage validity? Absolutely, Judge. And they can do that. All these attorneys are subject to the rules of professional conduct. They're all subject to disciplinary proceedings. But New York actually provides this cause of action under the Judiciary Law Section 47, right? Like there is a cause of action against attorneys, right? Correct. So in order to litigate that in the first proceeding, what would she have to do? She'd have to seek to add the attorneys of the Millers as additional defendants and then pursue 47 claims against them in that proceeding. That would be very strange, wouldn't it? Well, the cases haven't gotten that far. None of the state court cases. No, I understand. But when you tell me that she could pursue it, that her remedy is in the first proceeding, right? That's what would have to happen, wouldn't it be? To pursue a 47 claim against an attorney, the attorney is the party. So the attorney has to be the counterparty. So she'd have to name the attorneys as additional defendants in that first action and then seek the remedies under 47 against them. It was Urias and the cases along those lines would seem to support that. Or at least just go to the original court and just establish the fraud and then go from there. So maybe it's just a requirement to establish the fraud in some sense, but then still have a separate 47 action. That's a possibility. I could see that being a possible outcome. But again, I haven't seen any courts addressing this. No one's gotten this far. Why don't we hear rebuttal? Thank you. Yes. Thank you. Thank you. I think the trouble that the defendant attorneys have in this case on the race judicata and collateral estoppel issues is simply there's no privity. They've not really been able to get past the privity issue. So the fact that perhaps... Let me interrupt for a second. My confusion about your privity argument and maybe I just have misunderstood is that we have something called non-mutual collateral estoppel, where a loser has fully litigated a claim and lost, and then a party who has some relationship, although not necessarily a fiduciary or even privity, but interests aligned with the party who litigated against the losing party before, is entitled to invoke the finding and not let the person relitigate that factual finding again. And you don't need to show privity between the second comer to assert the finding against the loser. And in this case, Ms. Hansen was the loser on the validity question. And I don't see why the lawyers here don't have sufficient enough a relationship. And I don't believe it has to be privity in the classical sense with Miller and SRI in order to assert the validity that they can't re-litigate the validity of the mortgage. But maybe I'm misunderstanding your argument. Well, again, going back to the fact that our claims are the 487 deceit claim, that claim has not yet been decided. And it was impossible for that claim to have been decided because, again, it's against the attorneys. Ms. Miller, do you dispute that the question of the validity of the mortgage was decided in the first proceeding? Yes. No, I do not dispute that. So your argument is that actually your claims against the attorneys are compatible with respecting the prior court's judgment on the issue of the validity of the mortgage. Is that correct? Yes. There is an independent claim against the attorney regardless of what the attorney is. Maybe you could just explain how you could prevail against the attorneys without questioning the validity of the Miller mortgage. Well, there was other conduct that the attorneys participated in that did not only involve whether the Rachel mortgage was supported by consideration. The attorneys alleged that there was a default. The whole purpose of a foreclosure is that there's a default in the mortgage, right? So the attorneys alleged this default. But in fact, there really was no default. Rachel Miller testified that she was never planning on receiving payment. The attorneys also, and discovery would show this, we believe that they strategized how they were going to process the foreclosure. But the documents, the mortgage documents, all standard mortgage documents do allow foreclosure upon default or nonpayment, right? I mean, they could have asserted some kind of waiver or acceptance. But the fact that she didn't expect to get payments from SRI doesn't to me mean that the mortgage couldn't be foreclosed on by its terms. She actually stated that they were not due, that the mortgage payments were not due, that she would have waited until the property was sold before she would have been repaid. So that was a misrepresentation that was made to the court. Mr. Lieberman prepared a complaint where Rachel mortgage alleged that the mortgage was in default and included vast default rate of interest, which in fact turned this initially $1.2 million mortgage into a $4 million mortgage. And that was really very clearly designed to... I know that you are answering my question about why you can prevail without questioning the mortgage, but it sounds like you're now talking about issues that the state court decided, right? You're saying that actually the mortgage was not in default, but the state court decided that it was, right? The state court decided that the mortgage had priority, it was valid and it had priority over Joan Hansen's mortgage. The conduct that we are complaining about of the attorneys was this real orchestrated effort to do something more than what they were alleging to the court that they were doing. They were claiming that they were foreclosing a legitimate instrument. They had another agenda. What they really were doing was that Joan Hansen had the right to consent to a sale, and she was a creditor that was entitled to be repaid. They converted that arrangement to Joan Hansen now having to defend her interests over five years in litigation, not being paid and incurring legal fees. And at the end of the day, this foreclosure, which initially started as just a threat of a foreclosure, you remember the first attorney said- I think I understand this argument, but the problem that I'm having is that, is it possible for you to say that the attorneys were doing something illicit if in fact we have to accept the conclusions that the Miller mortgage was a legitimate thing to do and that it was enforceable? Well, yes. I mean, for the reasons that Your Honor mentioned earlier, is that this whole process of fighting this, of defending against this foreclosure, due to these representations that the attorneys made, expanded over a five-year period. And Ms. Hansen incurred separate and independent damages just defending the foreclosure. Not to say that any owner doesn't spend some time and money defending his foreclosure, but in this particular case, the purpose of the foreclosure was not the purpose that it was represented to the court. And that's really where there's this representation. Thank you, Ms. Miller. I think we have the arguments and we will take the matter under advisement. Thank you all. Thank you all.